IN THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


CRIMINAL NO. 96-00201

FILED
HARRISBURG, PA

MAR 13 2020

PER_____

DEPUTY CLERK


UNITED STATES OF AMERICA


V.


FREDDIE AGUILERA-QUINJANO,

Movant


MOTION FOR A REDUCTION OF SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)


Freddie Aguilera-Quinjano
Reg. No. 08389-016
FMC Butner
P.O. BOX 1600
Butner, NC 27509

Date: March 3, 2020

I. STATEMENT OF CASE AND RELEVANT FACTS

On August 11, 1997, Movant was sentenced to a term of life imprisonment for conspiring to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 841 and 846.[1]/

Movant is now 74 years old and has served more than 30 years in prison for his federal crimes. In or about October 2019, Movant was diagnosed with metastatic rectal cancer. See Attachment A. As a result of this diagnosis, Movant was transported to an outside medical facility for colorectal surgery in December 2019. Id. Thereafter, Movant was transferred from FCI Schuylkill (where he had been housed for approximately 7 - 10 years) to FMC Butner so that he could undergo chemotherapy treatment for the cancer condition. In addition to the cancer diagnosis, Movant has also been diagnosed with the following medical conditions: Type II Diabetes, arthritis, esophageal reflux disease, artrial fibrilliation, lumbago, angina, high blood pressure, aortic ectasia, bronchitis and hyperlipidemia.

An 'Inmate Request To Staff' was filed with the Warden on January 10, 2020. Therein, Movant—citing his metastatic rectal cancer diagnosis, requested that the Bureau of Prisons file a motion for compassionate release on his behalf. To date, the Warden has not responded to Movant's request.

---

1. In addition to the instant  case, Movant was also sentenced in different federal courts for controlled substance violations: (1) Cr. No.87-710 (S.D.Fla.) / 30 years imprisonment on 7-15-88; (2) Cr. No.87-255 (N.D.N.Y.) / 30 years imprisonment on 8-16-89; (3) Cr. No.85-98 (M.D.N.Caro.) / 15 years imprisonment on 6-25-90. Movant has filed similar motions for compassionate release in these respective courts citing his cancer condition.

1

## II. ARGUMENT

### (a) Legal Standard

Section 603 of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A).
This provision prohibits the modification of a term of imprisonment once it
has been imposed, except in limited circumstances. One of those circumstances
is compassionate release. Section 3582(c)(1)(A) provides, in relevant part,
that:

> "the court, upon motion of the Director of the Bureau of Prisons,
> or upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by
> the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment ... after considering the
> factors set forth in section 3553(a) to the extent that they
> are applicable, if it finds that --
>
> (i) extraordinary and compelling reasons warrant such a reduction[.]"

18 U.S.C. § 3582(c)(1)(A)(i). In addition to satisfying subsection (i), the
reduction must also be consistent "with the applicable policy statements issued
by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's
policy statement with regards to compassionate release is set forth in section
1B1.13 of the United States Sentencing Guidelines. It provides that the Court
may reduce the term of imprisonment only if three conditions are met:

> (i) extraordinary and compelling reasons warrant the reduction,
> id. § 1B1.13(1((A);
>
> (ii) the defendant is not a danger to the safety of any person
> or to the community, as provided in 18 U.S.C. § 3142(g),
> id. § 1B1.13(2); and
>
> (iii) the reduction is consistent with this policy statement. Id.
> § 1B1.13(3).

2

The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." Id. § 1B1.13 App. N. 1. Two of these reasons are relevant in this instance:

> (A) Medical Condition of the Defendant –
>
>> (i) the defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., the probability of death within a specific time period) is not required.
>
> ....
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Id. § 1B1.13 App. N. 1(A) & (B).

## (b) Discussion

### Exhaustion

The First Step Act amendments provide that a court may now consider a motion for compassionate release made by a defendant who has exausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days. See 18 U.S.C. § 3582(c)(1)(A). This amendment essentially allows the BOP time to consider and act upon requests for compassionate release before necessitating court intervention.

Movant presented his request for the filing of a motion on his behalf by the BOP on January 10, 2020. Because more than thirty days have elapsed since Movant requested that the BOP file a motion for a reduction on his behalf, he has exhausted his administrative remedies under § 3582(c)(1)(A). See, e.g.,

3

United States v. Gross, 2019 U.S. Dist. LEXIS 97933 @ 6 (D.Ariz.2019)(finding that review of the merits of defendant's motion for compassionate release proper where more than thirty days had elapsed from the time in which he requested that the BOP file such a motion on his behalf and time in which he moved the court for a reduction for compassionate release notwithstanding the BOP's failure to respond to the request); United States v. Beck, 2019 U.S. Dist. LEXIS 108542 @ 17 (M.D.N.Caro.2019)(same); United States v. Cantu, 2019 U.S. Dist. LEXIS 100923 @ 6 (S.D.TX.2019)(same). The Court may therefore address the merits of Movant's request for compassionate release.

### Extraordinary and Compelling Reasons

Pursuant to USSG § 1B1.13, "extraordinary and compelling reasons" exist where "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy ... is not required." United States v. McGraw, 2019 U.S. Dist. LEXIS 78370 (S.D.Ind.2019)(citing USSG 1B1.13 App. N. 1). The guidance lists "metastatic solid-tumor cancer" as a specific example of terminal illness. Id. The Application Note also provide that if the defendant "(i) is at least 65 years old, (ii) is experiencing a serious deterioration in physical ... health because of the aging process; and (iii) has served at least 10 years ..." a sentencing reduction may be appropriate. Id. There are extraordinary and compelling reasons supporting Movant's release under either approach.

First, Movant has been diagnosed with metastatic rectal cancer that, unfortunately, qualifies as a terminal illness, regardless of his life-expectancy. Other district courts have granted compassionate release motions when the

4

defendant had been diagnosed with a certain type of advanced cancer. See United States v. Pesterfield, No. CR 14-00014, Doc. No. 756, @ 3 (E.D. Tenn. 2019)(defendant's stage IIIB metastatic rectal cancer that had spread to her lymph nodes constituted 'extraordinary and compelling reason' warranting compassionate release); United States v. Wong Chi Fai, 2019 U.S. Dist. LEXIS 126774 (E.D.N.Y. 2019) (defendant's metastatic papillary thyroid cancer that obstructed his airway constituted 'extraordinary and compelling reason' warranting compassionate release); United States v. Spears, 2019 U.S. Dist. LEXIS 177991 (D. Ore. 2019) (defendant's metastatic prostrate cancer constituted an 'extraordinary and compelling reason' warranting compassionate release); United States v. Gasich, 2019 U.S. Dist. LEXIS 152694 (N.D. Ind. 2019)(defendant's stage four metastatic breast cancer that had spread to her bones, lymph nodes, chest muscles, wall, and liver constituted an 'extraordinary and compelling reason' warranting compassionate release); United States v. Schmitt, 2020 U.S. Dist. LEXIS 2832 (N.D. Iowa 2020) (defendant's stage four metastatic breast cancer constituted an 'extraordinary and compelling reason' warranting compassionate release). It is also important to note that even though Movant is receiving treatment for his cancer condition, viz., colorectal surgery was performed in December 2019 and he is currently undergoing chemotherapy, this treatment does not alter the fact that he is presently suffering from a terminal illness. See Schmitt, supra, @ 11 (rejecting government's argument that 'extraordinary and compelling reasons' no longer existed because the defendant was receiving treatment for her illness).

Second, Movant is currently 74 years old, and, as a consequence of his cancer, the treatment related to that disease and the other myriad of medical conditions from which he suffers, has experienced a serious deterioration

in his physical health. Movant has also served more than 30 years for his federal offenses—more than the 10 years provided for in the Application Notes. Hence, Movant's age and current circumstances appear to qualify him for compassionate release independent of the fact that he suffers from a terminal medical condition.

### Danger to the Community

Section 1B1.13 provides that compassionate release is only appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." That statute directs a Court to consider: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that release would pose.

Movant does not dispute that his offense of distributing cocaine (and conspiring to do the same) is indeed a very serious offense insofar as it negatively impacted the communities and exploited those with addiction. Movant has spent decades in prison thinking about his previous mistakes and the harm that those mistakes caused to others. He remains extremely remorseful for his prior conduct and understands that a severe prison sentence was warranted because of the gravity of his crimes. Movant does acknowledge the multitude of controlled substance convictions that reflect in his criminal history. However, these convictions are decades-old, see Spears, supra, @ 14 (noting

6

that defendant's most recent drug conviction was more than 19 years old in assessing

his pontential danger to the community); United States v. Bellamy, 2019 U.S.

Dist. LEXIS 124219 @ 16 (D.Minn.2019)(considering the age of the defendant's

convictions for violent and controlled substance offenses in assessing his

potential danger to the community), and he does not have any convictions for

crimes of violence.

 Furthermore, Movant's current physical state indicates that he is not

a danger to the community. Specifically, Movant's age, cancer disease and

many other medical issues have rendered him physically frail and emaciated.

See, e.g., United States v. York, 2019 U.S. Dist. LEXIS 119768 @ 20 (E.D. Tenn.2019)

("Given Defendant's age and physical impairments, the Court is disinclined

to find that Defendant poses any significant risk to the community at this

time"); Wong Chi Fai, supra, @ 10 (concluding that defendant's physically

frail state weighed against a finding that the defendant posed a danger to

the community); Spears, supra, @ 11 (same); Bellamy, supra, @ 16 (same).

 Finally, if Movant is released, he will be deported to Cali, Columbia.

There, he will be under the care of sisters and brothers who would function

as his primary caregivers and who would also provide a stable living environ-

ment.

 In sum, Movant asserts that 'extraordinary and compelling reasons' exist

and that USSG § 1B1.13 and the 18 U.S.C. § 3553(a) factors support a finding

of compassionate release in this instance.

<h3 style="text-align:center">CONCLUSION</h3>

 For the foregoing reasons, the motion for a reduction of sentence should

7

be granted.

                                        Respectfully Submitted,

Date: March 3, 2020             /s/ _~~Freddi Aguila~~_____
                                        Freddie Aguilera Quinjano


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion for a reduction of sentence was affixed with sufficient First-Class U.S. postage and forwarded to the following party:




Date: March 3, 2020             /s/ _~~Freddie Aguila~~_____
                                        Freddie Aguilera Quinjano

8

ATTACHMENT A

Dec. 18. 2019 10:33AM                                                    No. 9871   P. 2

.Operative Report                          AGUILERA-QUINJANO, FREDDIE - HMC8548367
* Final Report *

08389.016

# * Final Report *

## OPERATIVE REPORT

**Name:** AGUILERA-QUINJANO, FREDDIE
**Patient Number:** HMC8548367
**DOB:** 06/19/1945
**Date of Service:** 12/17/19

SURGEON: Dr. Michael Deutsch

ASSISTANT(s): Dr. Almaz Kurbanov

PREOPERATIVE DIAGNOSIS: Rectal cancer near obstructing

POSTOPERATIVE DIAGNOSIS: Same, metastatic disease

OPERATION PERFORMED: Diagnostic laparoscopy, laparoscopic diverting loop colostomy creation

ANESTHESIA: General

COMPLICATIONS: None

SPECIMENS: None

ESTIMATED BLOOD LOSS: Minimal

INDICATIONS: The patient is a 74 year old male who is currently incarcerated, with a fungating rectal mass found to be 12 cm from the anal verge on colonoscopy 10/1/19, with biopsy revealing moderately differentiated adenocarcinoma. Two additional polyps were excised at the hepatic flexure and the ascending colon consistent with tubular adenoma. CEA was 40 at this time. PET CT performed 11/22 was significant for FDG avidity in a few regional lymph nodes, concerning for local nodal metastasis. He presented to clinic today for surgical evaluation. Since he was last seen 10/23 in clinic, he reports worsening constipation and blood per rectum. The mass is now partially obstructing the lumen of his rectum, and he describes narrowed caliber of his stool. He has 1 bowel movement every 2 or 3 days, and strains considerably to have a bowel movement. He reports bleeding with straining, whether or not he produces stool, and also occasionally finds blood mixed with stool. He additionally notes that he has increased urinary frequency, and that he has blood in his urine when he strains to urinate. He denies any burning with urination, fever, nausea, vomiting, or abdominal pain. He maintains his appetite, but does believe he has lost weight because he has been avoiding eating due to fear of worsening constipation. Denies fever, chills, SOB.

Given these findings, a complex, comprehensive and extensive discussion was initiated with the patient regarding the risks, benefits and alternatives of the procedure. These included but were not limited to mental status changes, delirium, renal failure, deep venous thrombosis, possible stroke, possible heart attack or cardiac arrhythmia, atelectasis, pneumonia, infection, bleeding, ileus, bowel perforation, incisional hernia, injury to nearby structures such as blood vessels or urinary system, and need for open procedure.  These were explained to the patient using as little medical jargon as

FCI/FPC Schuylkill
P.O. Box 700
Minersville, PA 17954

Printed by:     Tice, RN, Shelly                                        Page 1 of 3
Printed on:     12/18/2019 10:26 EST                                    (Continued)

.Operative Report
* Final Report *

AGUILERA-QUINJANO, FREDDIE - HMC8548367

08389·014

possible. The patient demonstrated satisfactory understanding of their condition as well as these risks. The patient elected for operative intervention at this time.

FINDINGS: Distal rectal mass, implant along the sigmoid colon (mesenteric), no liver disease noted

OPERATION: The patient was brought to the operating room and general anesthesia was induced. Prior to arrival, the patient had not completed a mechanical prep due to the near obstruction but did take antibiotic bowel prep. The patient was then positioned in the supine position ensuring all bony prominences were padded. A timeout was completed, verifying the correct patient, procedure, site, positioning, any other implants or special equipment prior to incision. A Foley catheter was inserted, and the patient had an orogastric tube placed and the abdomen was prepped and draped in the usual sterile fashion. Intravenous antibiotics were given according to schedule prior to incision along with DVT prophylaxis.

Insufflation of the abdominal cavity was done with a 5 mm camera at Palmer's point in an Optiview technique. Layers of the abdominal wall were visualized as the trocar was advanced into the abdomen. Insufflation tubing was transferred over to this trocar. A pressure of 15mmHg was established and exploration of the abdominal cavity took place to rule out any injury upon entry or other abscess collections. Inspection did not demonstrate any injury to the overlying colon or stomach. Diagnostic laparoscopy was then performed which did not demonstrate any evidence of overt carcinomatosis, large abdominal wall implants, diaphragm implants or superficial liver disease. There was one firm area along the sigmoid mesentery.

Next an additional 5mm trochar was placed to facilitate bowel manipulation along the right side. Attention was turned to the sigmoid colon. This appeared to be minimally adhesed to the lateral sidewall and fixed more focally at the level of the sacral promontory making it difficult to mobilize. However there was significant redundancy in this region allowing for its reach to the anterior abdominal wall. This appeared slightly enlarged secondary to ongoing mass but otherwise normal.

A circular incision was made on the skin at the proposed stoma site and the subcutaneous tissues were dissected down thorugh the anterior sheath. This was in turn incised and the muscles split exposing the peritoneum. A babcock was then used to grasph the bowel through the incision. The size of the fascial defect was assessed and did not warrant any further closure.

The abdomen was then desufflated after removal of the trocars under direct visualiztion. Towels were placed to protect the field after the supraumbilical fascia and remaining port sites were closed with 4-0 monocryl. The bowel was incised and opened transversely. The contents were suctioned out. The double barrel stoma was matured with multiple interrupted mucoserous cutaneous sutures of 3-0 vicryl circumferentially in a modified Brooke fashion. After maturation, the stoma was noted to be pink and viable. A colostomy appliance was then placed.

The patient tolerated the procedure well and was awakened from monitored anesthesia care and was taken to the post anesthesia care unit in stable condition. All instrument and lap pad counts were reported as correct at the end of the procedure prior to closure. I, Dr. Michael Deutsch, was present and scrubbed for the entirety of the operation.

**Signature Line**
Electronic Signature on File

Electronically Reviewed/Signed by: Michael J Deutsch, MD  Author Signature Dt/Tm:12/17/2019 12:29 PM
Division of Colorectal Surgery

FCI/FPC Schuylkill
P.O. Box 700
Minersville, PA 17954

Printed by:      Tice, RN, Shelly
Printed on:      12/18/2019 10:26 EST

Eric A. Hicks
Reg. No. 15426-016
Federal Correctional Institution Schuylkill
P.O. BOX 759
Minersville, PA. 17954

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7017 2620 0001 1640 9408