# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:96-CR-00201-02 |
| v. | (Judge Brann) |
| FREDDIE AGUILERA-QUINJANO, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 15, 2020

Currently pending before the Court is Freddie Aguilera-Quinjano's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Aguilera-Quinjano contends that he is entitled to release to home confinement due to the COVID-19 pandemic and his particular susceptibility to the virus.[2] The Government opposes the motion.[3]

### I.     BACKGROUND

In 1997, Aguilera-Quinjano was convicted, following a jury trial, of conspiracy to possess with the intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846.[4] Aguilera-Quinjano was thereafter sentenced to a term of life imprisonment.[5]

---

[1]  Doc. 475.
[2]  *Id.*; Doc. 480.
[3]  Doc. 488.
[4]  Docs. 21, 204.
[5]  Doc. 254.

This conviction was merely the last in a long string of criminal convictions that Aguilera-Quinjano sustained for drug trafficking. In 1988, Aguilera-Quinjano was convicted in the United States District Court for the Southern District of Florida of possession and conspiracy to possess with the intent to distribute five or more kilograms of cocaine and was sentenced to thirty years' imprisonment.[6] In 1989, Aguilera-Quinjano was again convicted of—among other crimes—possession with the intent to distribute cocaine, this time in the United States District Court for the Northern District of New York.[7] Aguilera-Quinjano was sentenced to thirty years' imprisonment, to be served consecutive to his sentence in the Southern District of Florida.[8] Then, in 1990, Aguilera-Quinjano was convicted in the United States District Court for the Middle District of North Carolina of conspiracy to manufacture and possess with the intent to distribute cocaine and was sentenced to fifteen years' imprisonment, to run concurrent to his other sentences.[9]

Aguilera-Quinjano is currently incarcerated at the Federal Medical Center Butner, located in Butner, North Carolina ("FMC Butner"), and has filed a motion for compassionate release.[10] In his motion, Aguilera-Quinjano asserts that he is 75 years of age and suffers from, most notably, stage three rectal cancer, hypertension,

---

[6] *United States v. Aguilera-Quinjano*, No. 1:87-CR-00710-MGC-1 (S.D. Fla., ECF Nos. 1, 117).
[7] *United States v. Aguilera-Quinjano*, No. 1:87-CR-00255-LEK-1 (N.D.N.Y., ECF Nos. 1, 64, 76).
[8] *Id.* at ECF No. 76.
[9] *United States v. Aguilera-Quinjano*, No. 2:85-CR-00098 (M.D.N.C.).
[10] Doc. 475.

type 2 diabetes mellitus, and coronary heart disease, all of which place him at a higher risk of serious illness or death should he contract COVID-19.[11] The Government concedes that Aguilera-Quinjano's medical conditions place him at an elevated risk of harm from COVID-19, but responds that the relevant 18 U.S.C. § 3553(a) sentencing factors militate against releasing him from confinement.[12] This motion is ripe for consideration and, for the following reasons, Aguilera-Quinjano's motion will be denied.

## II. DISCUSSION

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[13] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies[14] and if, as relevant here, "extraordinary and compelling reasons warrant such a reduction."[15] Courts should also consider the relevant § 3553(a) sentencing factors[16] and whether "the defendant

---

[11] Docs. 480, 482.
[12] Doc. 488.
[13] *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[14] The Government concedes that Aguilera-Quinjano has exhausted his administrative remedies. (Doc. 488 at 7-8).
[15] 18 U.S.C. § 3582(c)(1)(A)(i).
[16] *Id.*

is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[17]

### A. Extraordinary and Compelling Reasons

Congress has not defined the term "extraordinary and compelling." However, the Sentencing Guidelines define the term to include a terminal illness, or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[18] This definition is not, however, authoritative, as "[t]he Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated."[19] Thus, while "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, . . . it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."[20] "The burden rests with the defendant to show that a reduction in sentence is proper."[21]

Aguilera-Quinjano has sustained his burden of establishing that extraordinary and compelling reasons weigh in favor of granting compassionate release. As an

---

[17] U.S. Sentencing Guidelines Manual § 1B1.13(2).
[18] *Id.* § 1B1.13, cmt. n.1(A).
[19] *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020).
[20] *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).
[21] *United States v. Rengifo*, No. CV 1:13-CR-00131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020).

4

initial matter, the Court notes that the existence of COVID-19 cannot alone justify compassionate release. As the United States Court of Appeals for the Third Circuit has explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.[22]

Thus, to demonstrate extraordinary and compelling reasons for compassionate release, movants must show that they suffer from one or more ailments that render them particularly susceptible to serious injury or death should they contract COVID-19.

Aguilera-Quinjano's medical records reveal that he suffers from numerous ailments that increase his susceptibility to serious illness as a result of COVID-19, including cancer, hypertension, type 2 diabetes mellitus, obesity, and coronary artery disease.[23] The Centers for Disease Control and Prevention lists these conditions as factors that increase an individual's risk for serious complications from COVID-19.[24] The risks posed by these conditions have been confirmed by numerous

---

[22] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).
[23] Doc. 482 at 1, 3, 7, 9, 69, 139, 155-56, 160, 183-84, 188, 193-95, 201.
[24] *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 7, 2020).

5

studies.[25] Thus, it is clear that Aguilera-Quinjano is at a high risk of serious illness or death from COVID-19 and, as the Government concedes,[26] has therefore "shown 'extraordinary and compelling reasons' that would allow the court to grant compassionate release."[27]

### B. Relevant Sentencing Factors

Turning next to the relevant § 3553(a) factors, the Court concludes that said factors militate against a sentence reduction. The relevant sentencing factors to consider under § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[28]

As to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court notes that the offense was a serious one. Aguilera-Quinjano was involved in a conspiracy to distribute large quantities of

---

[25] *See* Centers for Disease Control and Prevention, *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited Oct. 7, 2020).
[26] Doc. 488 at 9-11.
[27] *United States v. Horton*, No. 1:13-CR-16, 2020 WL 4473405, at *4 (M.D. Pa. Aug. 4, 2020).
[28] 18 U.S.C. § 3553(a).

cocaine, which not only may have resulted in individuals becoming addicted to cocaine, but also could have resulted in numerous overdoses and/or deaths. Notably, Aguilera-Quinjano ran this drug trafficking conspiracy from inside a federal prison while he was in custody for previous drug offenses.[29] While in federal custody, Aguilera-Quinjano managed to connect cocaine producers in Columbia with drug traffickers in the United States; police interdicted seventeen kilograms of cocaine during the course of this conspiracy, although they determined that the conspiracy resulted in the distribution of at least fifty kilograms of cocaine.[30] The PSR also recommended a sentencing enhancement for obstruction of justice, as Aguilera-Quinjano made several attempts to threaten witnesses against him, including apparently plotting the murder of one witness's brother.[31] The severity of this crime is reflected in the life sentence imposed for this conviction.

Moreover, as discussed above, Aguilera-Quinjano has a lengthy and serious criminal history. In addition to a previous conviction for burglary, Aguilera-Quinjano's criminal history includes three separate convictions for involvement in drug trafficking conspiracies that resulted in the distribution of dozens of kilograms of cocaine along the eastern coast of the United States.[32] This history weighs heavily against immediate release from custody.

---

[29] *See* Presentence Report (PSR) at 5-7.
[30] *Id.* at 7, 8.
[31] *Id.* at 11.
[32] *Id.* at 13-15.

Turning to the need to protect the public, the Court notes that, although Aguilera-Quinjano's criminal history is lengthy and serious, there likely is no longer a significant need to protect the public from his criminal behavior. Aguilera-Quinjano is now 75 years of age and, as his medical records demonstrate, suffers from numerous ailments that impair his physical abilities. Simply by nature of Aguilera-Quinjano's age and medical ailments, there is little possibility that he will again participate in an international criminal drug trafficking conspiracy.

Importantly, a study conducted by the United States Sentencing Commission reveals that offenders above the age of 60 with a base offense level of 36 for their crime of conviction have only a 3.5 percent recidivism rate.[33] This emphasizes the very low risk that Aguilera-Quinjano poses to the public should he be released from custody and indicates that there is not a strong need to afford adequate deterrence through continued detention. Balanced against this is the fact that Aguilera-Quinjano was in federal custody when he committed the present crime.[34] This raises some concern that nothing short of continued incarceration may prevent Aguilera-Quinjano's criminal behavior. Nevertheless, there is no strong need to protect the public from Aguilera-Quinjano or afford adequate deterrence to future criminal activity, and these considerations thus weigh in favor of release from custody.

---

[33] *The Effects of Aging on Recidivism Among Federal Offenders*, p. 17, fig. 9 (United States Sentencing Commission Study, Dec. 2017).
[34] Doc. 19 at 7.

Turning last to the need to promote respect for the law, to provide just punishment for the offense, and to reflect the seriousness of the offense,[35] none of these sentencing goals would be met by granting compassionate release. It bears noting that Aguilera-Quinjano has not been sentenced to a term of years imprisonment, but to a term of life; the sentence explicitly contemplates that Aguilera-Quinjano will remain in federal custody for the remainder of life.[36] This sentence was imposed for good reason—Aguilera-Quinjano's crime of conviction was brazen and shocking. Not only did he distribute dozens of kilograms of cocaine, but he did so while in federal custody and serving three active sentences for drug trafficking. It appeared that virtually nothing could or would prevent Aguilera-Quinjano from further criminal offenses.

Given these facts, a release from custody simply would not promote respect for the law, provide just punishment for the offense, or reflect the seriousness of the offense. Accordingly, the Court concludes that the relevant § 3553(a) factors weigh against granting Aguilera-Quinjano's motion for compassionate release.

---

[35] 18 U.S.C. § 3553(a).
[36] Moreover, the Court notes that Aguilera-Quinjano is serving the sentence imposed by the Northern District of New York, and likely still has in excess of one decade left to serve of that sentence. Thus, this Court does not truly have the power to release Aguilera-Quinjano from custody, as a modification of his sentence from this Court would still leave him in custody to serve the remaining sentence imposed by the Northern District of New York.

### C. Dangerousness

Finally, the Court must consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[37] As discussed above, it is apparent to the Court that Aguilera-Quinjano does not present a significant danger to his community. This factor therefore does not weigh against his release from custody.

### D. Weighing the Relevant Considerations

After weighing the relevant considerations, the Court concludes that the relevant § 3553(a) factors—most notably the extremely serious nature of the offense—outweigh Aguilera-Quinjano's extraordinary and compelling reasons for compassionate release. Accordingly, the Court will deny his motion for compassionate release.

## III. CONCLUSION

For the foregoing reasons, Aguilera-Quinjano's motion for compassionate release will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[37] USSG § 1B1.13(2).